Dwain E. MATELSKI, Appellant,

v.

Sharon MATELSKI, Appellee.

No. 2–91–273–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 14, 1992.

Richard C. Price, Fort Worth, for appellant.

Clarke & Tiffany, Carl T. Clarke, DeForrest N. Tiffany, Fort Worth, for appellee.

Before HILL and FARRIS, JJ., and ASHWORTH, J. (Retired) Assigned Justice.

## OPINION

HILL, Justice.

Dwain E. Matelski appeals from a judgment following the motion of Sharon Matelski, Dwain's ex-wife and the appellee, to enforce and clarify their final divorce decree.

Dwain contends in nine points of error that the trial court erred: (1) in signing the judgment of August 8, 1991 and the findings of fact and conclusions of law of August 8, 1991, because the August 8, 1991 judgment was not a final judgment; (2) in allowing Sharon to proceed under TEX. FAM.CODE ANN. § 3.70 (Vernon Supp. 1992) because that section does not apply to the enforcement of a partition agreement; (3) when it entered its findings of fact and conclusions of law that the partition agreement dated April 4, 1985, was incorporated by reference into the decree of divorce dated September 26, 1986, and

that the partition agreement therefore became part of the judgment of the court as set forth in the decree of divorce; (4) in granting Sharon's motion to extend time to answer his request for admissions because she did not demonstrate good cause for such relief; (5) in finding that there was no duress in the execution of the partition agreement because it was contrary to the evidence; (6) when it entered its findings of fact that Dwain was in default in paying retirement benefits in the amount of $75,000 because the evidence is legally, or, alternatively, factually insufficient to support the findings; (7) in awarding Sharon her attorney's fees; and (8) when it entered its findings of fact and conclusions of law because the evidence is legally insufficient, and, in the alternative, factually insufficient to support the findings and conclusions.

We reverse that portion of the judgment dealing with the amount of money Dwain owes Sharon with respect to the partition of their interest in the certificates of deposit in Dwain's corporate pension plan because there is no evidence to support the trial court's conclusion that Dwain owed Sharon $75,000 for her interest in those certificates. We affirm the remainder of the judgment because: (1) the judgment is a final judgment because it necessarily disposes of all parties and issues involved in the suit; (2) those portions of the partition agreement that do not constitute a partition of property may properly be considered an agreement incident to divorce enforceable under the provisions of section 3.70 of the Texas Family Code; (3) Dwain makes no argument as to why those portions of the agreement that did constitute a partition of property could not be enforced as an agreement independently of the divorce decree, relief that Sharon alternatively sought; therefore, there is no showing that any error of the trial court in determining that the portion of the agreement partitioning the property was enforceable as part of the divorce decree was such an error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment; (4) the trial court did not abuse its discretion in holding that

there was good cause in granting Sharon's request for an extension of time to answer Dwain's first request for admissions where they were not answered due to confusion caused by a quick succession of requests and new, inexperienced office personnel; (5) the trial court's finding that Dwain was not under duress when he signed the partition agreement is not contrary to the great weight and preponderance of the evidence; (6) the trial court did not err in awarding Sharon her attorney's fees because in a trial before the court the trial court may review the file and take judicial notice of the amount of reasonable attorney's fees; and (7) numerous findings of fact and conclusions of law complained of by Dwain are not, if in error, findings that are reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Dwain contends in points of error numbers one and two that the trial court erred in signing the judgment of August 6, 1991, and the findings of fact and conclusions of law of August 8, 1991, because the August 8, 1991 judgment was not a final judgment. Sharon had previously filed her motion for enforcement and clarification of final decree of divorce. An instrument entitled a partition agreement was incorporated by reference into the decree, although apparently never attached to the decree. Sharon's motion was amended several times. Dwain contended by way of cross-action that he was under duress when he signed the partition agreement. On August 8, 1991, the trial court signed its judgment granting Sharon's motion. In that judgment the trial court enforced the partition agreement. It did not specifically refer to Dwain's cross-action.

 In order to be a final judgment, a judgment must dispose of all parties and of all issues involved in the suit. *Davis v. McCray Refrigerator Sales Corp.*, 136 Tex. 296, 150 S.W.2d 377 (1941). As the supreme court stated in *Davis*, however, it is not essential that the judgment expressly dispose of each issue. *Id.* 150 S.W.2d at 378. Rather, the disposition of a particular issue may be inferred from the other provi-

sions of the judgment, provided that the inference follows as a necessary implication. *Id.* In this case, the trial court necessarily denied Dwain's claim that he was under duress when he signed the partition agreement when the court signed the judgment enforcing that agreement.

Dwain points out that the trial court orally said that there would be a later jury trial on the issue of duress. Even if the trial court had made a docket entry to that effect, the judgment would control over the docket entry. *Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 110 S.W.2d 561, 566 (1937); *Harrington v. Harrington*, 742 S.W.2d 722 (Tex.App.—Houston [1st Dist.] 1987, no writ). We assume that the same rule would apply as to oral pronouncements of the court.

Dwain's contention that the trial court erred by prematurely making findings of fact and conclusions of law is based upon the premise that the judgment of August 8, 1991, was not final. We overrule points of error numbers one and two.

Dwain urges in points of error numbers three and four that the trial court erred in allowing Sharon to proceed under section 3.70 of the Texas Family Code because that section does not apply to enforcement of a partition agreement, and that the trial court erred when it entered its findings of fact and conclusions of law that the partition agreement dated April 4, 1985, was incorporated by reference and became part of the divorce decree dated September 26, 1986.

■ Dwain contends that because the agreement in question was a partition agreement pursuant to TEX.FAM.CODE ANN. § 5.52 (Vernon Supp.1992) that it could not also be an agreement incident to divorce enforceable under the provisions of section 3.70 of the Family Code. An examination of the instrument styled "partition agreement" shows that a portion is indeed a partition agreement, but that a large portion of the instrument deals with matters, such as child support, visitation, and alimony that would be part of an agreement incident to divorce.

Dwain's argument that a partition agreement may not be enforced under the provisions of section 3.70 of the Family Code is not effective as to those portions of the agreement that did not constitute a partition of the Matelskis' property under section 5.52 of the Family Code, but were instead provisions that would normally be part of an agreement incident to a divorce.

■ Dwain is correct in stating that the portion of the agreement that was a partition agreement divided the parties' property at the time of its execution and that the trial court at the time of divorce had no jurisdiction over the division of separate property that had already been divided because the trial court only has the authority to divide the community estate of the parties. *See Cameron v. Cameron*, 641 S.W.2d 210, 214 (Tex.1982). When the jurisdiction of a trial court is invoked in a divorce proceeding by the pleadings of either spouse, the court must decree a division of the community property. *See Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299, 302 (1960); *Whitehill v. Whitehill*, 628 S.W.2d 148, 150 (Tex.App.—Houston [14th Dist.] 1982, no writ). Of course, the lack of a community estate to be divided does not, as claimed by Dwain, nullify a divorce. If this were not true, only persons owning property could ever be divorced.

■ However, as to those portions of the agreement that do constitute a partition agreement, Sharon, as an alternative to enforcing the agreement as a part of the divorce decree, sought enforcement of the agreement as an agreement independently of the divorce decree. Dwain makes no argument in his brief as to why the agreement was not properly enforceable as an agreement independently of the decree. Consequently, if the trial court erred by determining that the partition portions of the agreement were enforceable as part of the divorce decree, we hold that Dwain has failed to establish that such an error was reasonably calculated to cause and probably did cause an improper judgment. *See* TEX.R.APP.P. 81(b)(1). The same rule would apply as to Dwain's argument that the agreement was not attached to the

decree. We overrule points of error numbers three and four.

■ Dwain urges in point of error number five that the trial court abused its discretion in granting Sharon's motion to extend time to answer Dwain's request for admissions because Sharon did not demonstrate good cause for such relief.

Dwain served requests for admissions on Sharon on January 10, 1989, and another set on January 12, 1989. Sharon answered both requests on Monday, February 13, 1989, the date that the response to the second set of requests was due, but several days after the response to the first set of requests would have been due. She timely filed a motion to extend time to answer the first set of requests. After the hearing, the trial court granted her motion.

Sharon's attorney testified at the hearing on her motion to extend the time to respond to the first request for admissions that the two sets of requests were delivered while he was in trial, and that when he got back out of trial, it was his impression, because the two sets were received in such "close conjunction," that they had both been delivered at the same time. He also stated that the person at the front desk of his office on the day the first request was delivered was brand new and did not know the correct procedures.

■ It has been held that where the plaintiff is not injured and the trial not delayed, even a slight excuse for the original failure to answer a request for admissions will suffice. *Esparza v. Diaz*, 802 S.W.2d 772, 776 (Tex.App.—Houston [14th Dist.] 1990, no writ). We therefore hold that the trial court did not abuse its discretion in holding that there was good cause in granting Sharon's request for an extension of time to answer Dwain's first request for admissions.

Dwain argues that a busy court schedule is not a sufficient reason to set aside deemed findings, relying on *Curry v. Clayton*, 715 S.W.2d 77 (Tex.App.—Dallas 1986, no writ). In that case the trial court found that a showing that the late filing of a response to a request for admissions was

due to an attorney's busy schedule was, without more, insufficient to show good cause for the late filing. *Id.* at 79. We hold that in this case there was more because, not only was the attorney busy, but there was confusion caused by a quick succession of requests and new, inexperienced office personnel. We overrule point of error number five.

Dwain insists in point of error number six that the trial court erred in finding that there was no duress in the execution of the partition agreement because it was contrary to the evidence. We must first determine which party had the burden of proof at trial on the issue of duress.

At the time of trial, the enforceability of a partition agreement was governed by section 5.55 of the Texas Family Code. That section holds that such an agreement is not enforceable if the party against whom enforcement is sought proves that he or she did not execute the agreement voluntarily. TEX.FAM.CODE ANN. § 5.55(a)(1) (Vernon Supp.1992). Consequently, at the time of trial, Dwain had the burden of proving that his execution of the agreement was not voluntary due to duress.

Dwain relies on the opinion in *Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) for his contention that Sharon had the burden of proof to prove by clear and convincing evidence that his consent was not procured by duress. We first note that the issue as to the burden of proof was not directly at issue in that case but also note that the opinion in the case preceded the adoption of section 5.55(a)(1) of the Texas Family Code.

■ We construe Dwain's point of error as an assertion that the trial court's finding of no duress is contrary to the great weight and preponderance of the evidence. In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). So considering the evidence, if the trial court's finding is so contrary to

the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam).

> There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. The restraint caused by such threat must be imminent. It must be such that the person to whom it is directed has no present means of protection.

*Dale v. Simon,* 267 S.W. 467, 470 (Tex. Comm'n App.1924, judgm't adopted); *Matthews,* 725 S.W.2d at 278.

██ According to the evidence, the parties during the pendency of the divorce were in the process of negotiating a property settlement agreement. Progress was being made in the negotiations. DeForrest Tiffany was acting as the attorney for Sharon, but Dwain had known him longer than Sharon had.

While negotiations were proceeding toward settling the property division issues in the pending divorce, Dwain was proceeding with the building of a lake house at the Fort Worth Boat Club. Under the agreement he had with the club, he would have a long-term lease on a lot at the club, and the club would allow him to build a lake house on the lot. He would not obtain any ownership rights to the land. Dwain hoped to move into the house with an employee with whom he had developed a relationship.

Dwain's bank informed him that it would not go through with permanent financing on the lake house. Someone involved in the construction of the house had a mechanics and materialmen's lien placed on the house. Thereafter, approximately thirty days before his interim financing was to lapse, the Fort Worth Boat Club sent Dwain a letter stating that it would confiscate the house if the lien were not lifted within thirty days.

Dwain's bank informed him that it would not provide permanent financing for the lake house as he had understood that it would. When he went to another bank to seek permanent financing, bank officials informed him that he would have to come up with a considerable amount of money and some collateral to obtain the financing because of the arrangement with the club that prohibited there being a lien on the house. The officials also informed him that the temporary orders that Sharon had obtained in the divorce proceeding would make it difficult for Dwain to arrange the needed financing on his own.

Dwain informed Sharon about the lien and the possible forfeiture of the house. Subsequently, Dwain obtained an agreement from Sharon that he could use $50,000 from his retirement plan and use other property covered by the temporary restraining order to obtain the needed permanent financing. He said that his decision to continue at that time without counsel was of his own volition, and that he did not know of the possibility of seeking court approval for what he wished to do rather than reach an agreement with Sharon.

Following meetings of Tiffany, the parties, and occasionally others, Sharon agreed to approve of the measures necessary to obtain the permanent financing on the lake house and Dwain agreed to sign the partition agreement. The partition agreement was signed either on the way to the bank to sign the papers for the permanent financing or at the bank itself. There was no physical or other abuse by Sharon or anyone else prior to the signing.

Sharon testified that Dwain was enthused to sign the partition agreement so that he could get his house. She also said that it was not really his motivation for signing it at that time, that the two things just coincided. She said that she did not remember telling Dwain that she could not agree to the measures necessary to obtain the permanent financing unless he signed the agreement.

Dwain and Sharon left the bank together. Sharon testified that Dwain did not appear distressed, but instead was smiling and friendly toward her. He said nothing about her having pushed him into an unfair situation. She related that he thanked her for lifting the injunction so he could get his house and she thanked him for signing the partition agreement. In response, he reminded her of his promise to always take care of her.

Dwain testified that he thinks that Sharon's actions constituted extortion and that she did not deal with him fairly. He said that he did not know whether Sharon had threatened to do something she had no legal right to do. He inferred that she refused to sign the agreement if he would not sign the partition agreement. He said he signed the agreement because he would have lost the house and had to pay the bank back if he had not.

The partition agreement was signed on April 4, 1985. The divorce decree was not signed until September 22, 1986. During that time Dwain continued to represent himself after voluntarily choosing not to obtain counsel. Dwain acknowledged that one of the purposes of the divorce decree was to incorporate the partition agreement into the decree. He indicated that he understood that he did not have to sign the decree.

Although Tiffany had made it clear to Dwain that he was representing Sharon and could not represent him, Dwain thought that Tiffany's actions in helping him to obtain permanent financing for the lake house and on other matters were in his best interest.

We hold that the trial court's finding that there was no duress is not contrary to the great weight and preponderance of the evidence, in view of the evidence indicating that Dwain signed the agreement because he wanted to and that he was pleased with the arrangement. We overrule point of error number six.

Dwain urges in point of error number seven that the evidence is legally and, in the alternative, factually insufficient to support the trial court's finding that he was in default in paying retirement benefits to Sharon in the amount of $75,000.

■ We will first consider only the evidence and inferences that tend to support the trial court's finding and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding, the legal insufficiency point must be overruled and the finding upheld. *Id.*

■ The partition agreement provided that Dwain and Sharon were each to receive 50% of the certificates of deposit derived from Dwain's corporate pension plan, with interest accrued from January 1, 1985. The agreement was to have an Exhibit E attached to it listing those certificates but the copy in our record has no such exhibit attached.

We have examined the testimony of the parties and can find no evidence of $150,000 worth of certificates of deposit that might be considered to be divided by the partition agreement, resulting in a share for Sharon in the amount of $75,000. We have examined the evidence that Sharon refers to in her brief but our most careful analysis, and giving Sharon the benefit of every question, shows that the amount due Sharon would be far short of the $75,000 found by the court. We sustain point of error number seven.

■ Dwain argues in point of error number eight that the trial court erred in awarding her attorney's fees. He points out that there was no testimony that the amount of attorney's fees found by the court was reasonable. In a trial before the court, the trial court may review the case file and take judicial notice of the amount of reasonable attorney's fees, whether or not requested by a party to do so. *Lacy v. First Nat. Bank*, 809 S.W.2d 362, 367 (Tex. App.—Beaumont 1991, no writ); TEX.CIV. PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986). We overrule point of error number eight.

Dwain contends in point of error number nine that the trial court erred when it en-

tered several of the trial court's findings of fact and conclusions of law because the evidence is legally insufficient, or, alternatively, factually insufficient to support them. We have examined all sixteen findings and find that as to all except finding 6j none of these findings, if error, is such a finding as was reasonably calculated to cause or probably did cause the rendition of an improper judgment.

In its finding 6j, the court found that Dwain was in default by failing to transfer $75,000, representing 50% of the certificates of deposit in his corporate pension plan. As previously noted, there is no evidence to support the trial court's finding. We sustain point of error number nine as to this finding; otherwise we overrule point of error number nine.

We find that the issue of the amount of money, if any, due to Sharon with respect to the division of certificates of deposit that were part of Dwain's corporate pension plan, affects only a part of the matter in controversy and is clearly separable without unfairness to the parties. Consequently, we reverse and remand as to that issue only. We affirm the remainder of the judgment. Costs are charged 10% to Sharon Matelski, the appellee, and 90% to Dwain E. Matelski, the appellant.