# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00705-CV

## In re Preston Graham

### ORIGINAL PROCEEDING FROM TOM GREEN COUNTY

## O P I N I O N

Relator Preston Graham petitions for a writ of mandamus directing the county court at law to transfer a probate proceeding from Tom Green County to Travis County. Because we hold that venue of the underlying proceeding is mandatory in Travis County, we conditionally grant Preston's petition.[1]

A trial court's denial of a motion to transfer venue pursuant to a mandatory venue provision is reviewable by mandamus. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 15.016, 15.0642 (West 2002). A mandamus involving mandatory venue is reviewed using an abuse-of-discretion standard. *In re Missouri Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex. 1999). Because it is presumed that there is no adequate remedy for a failure to enforce a mandatory venue statute, the relator is not required to show a lack of adequate remedy on appeal. *Id.*

---

[1] Because the relator, Preston Graham, and the deceased in the underlying probate case, Dianne Hanks Graham, share the same surname, we will refer to these parties by their first names to avoid confusion.

The probate code provides mandatory venue for the probate of wills and administration of estates. Tex. Prob. Code Ann. § 6 (West 2003). Mandatory venue lies in the county where the deceased resided, if the deceased had a domicile or fixed place of residence in Texas. *Id*. § 6(a). If the deceased died in Texas but had no domicile or fixed place of residence in the State, venue is proper either in the county where the deceased's principal property was located at the time of her death, or in the county where she died. *Id*. § 6(b).

The deceased in this case, Dianne Hanks Graham, died on January 16, 2006, in Travis County. Her will was filed for probate in Tom Green County by her mother, Freda Nutt Hanks. When the will was filed for probate, Preston and Hanks each executed an affidavit stating, "Decedent was domiciled and her principal property was located in this county at the date of death." The will was admitted to probate by the constitutional county court in Tom Green County on February 8, 2006.

On March 15, 2006, Hanks disclaimed her interest in Dianne's estate, with the result being that the estate would go to Dianne's two sons, Preston and Barclay Graham. Barclay Graham died on October 19, 2006. On April 19, 2007, Hanks filed suit against Preston in Tom Green County, seeking a declaratory judgment that her disclaimer was invalid. The constitutional county court subsequently transferred the contested issue regarding Hanks's disclaimer to County Court at Law No. 2 of Tom Green County.

Preston moved to transfer venue of all probate proceedings from Tom Green County to Travis County, asserting that Dianne was domiciled in Travis County at the time of her death. After a hearing, the county court at law denied Preston's motion to transfer venue on

2

November 26, 2007.[2]  Preston now seeks mandamus relief to compel the transfer of the entire probate proceeding to Travis County.

Section 6 of the probate code is titled, "Venue for probate of wills and administration of estates of decedents."  Hanks argues that Preston cannot move to transfer venue under section 6 because the suit regarding her disclaimer is a "matter incident to an estate,"[3] rather than a probate proceeding, and therefore section 6 does not apply.  However, Preston's motion to transfer venue was not limited to the contested matter of Hanks's disclaimer, but requested transfer of "all proceedings connected with Cause Number 06P045, Estate of Dianna Hanks Graham."  As a result, the mandatory venue provisions of chapter 6 are applicable to this proceeding.[4]

Hanks further argues that Preston cannot now challenge venue because venue was determined by the constitutional county court's order admitting the will to probate, and that order is a final decree that is not subject to collateral attack.  *See id*. § 8(e) (stating that a court in which there has been filed an application for a probate proceeding has full jurisdiction to determine venue of the probate proceeding and any related proceeding, and its determination shall not be subject to collateral attack).  However, because Preston's motion to transfer venue seeks transfer of the entire

---

[2] Because only the contested matters of the probate proceeding were transferred to the county court at law, Preston also filed a motion in the constitutional county court, requesting that the contested venue issue be transferred to the county court at law for resolution and requesting transfer of the entire probate proceeding to Travis County.  The constitutional county court transferred the contested venue issue to the county court at law on August 28, 2007.

[3] The probate code provides that courts exercising probate jurisdiction shall have the power to hear "all matters incident to an estate."  *See* Tex. Prob. Code Ann. § 5(f) (West Supp. 2007).

[4] Because it is not necessary to our holding in this case, we express no opinion regarding the applicability of the mandatory venue provisions of section 6 to matters incident to an estate.

3

probate proceeding as discussed above, it is not a collateral attack, but a direct challenge to the venue determination in the order admitting the will to probate.

Hanks further attacks Preston's motion on a third and final procedural ground. The probate code provides for transfer of proceedings for want of venue "[i]f it appears to the court at any time before the final decree that the proceeding was commenced in a court which did not have priority of venue." *Id*. § 8(c)(1). Hanks contends that the order admitting the will to probate was a "final decree" for purposes of section 8(c)(1), and therefore the proceeding may not be transferred for want of venue.

"Final decree" is not defined in the probate code. At least one court has upheld a venue challenge under section 8(c)(1) that was brought after the trial court entered an order admitting the will to probate. *In re Estate of Izer*, 693 S.W.2d 481, 482, 484 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Like the party challenging venue in *Izer*, Preston sought a venue transfer of the probate proceeding after the will had been admitted to probate. An independent administration—the probate method employed for Dianne's estate—is not considered closed until all property has been distributed and debts have been paid as fully as the assets allowed. *See Texas Commerce Bank-Rio Grande Valley, N.A. v. Correa*, 28 S.W.3d 723, 728 (Tex. App.—Corpus Christi 2000, pet. denied). Because Hanks has not provided, nor have we found, any substantial authority for the proposition that an order admitting a will to probate is a "final decree" for purposes of section 8(c)(1), we hold that section 8(c)(1) does not preclude Preston's motion to transfer venue.

4

Preston contends that Dianne was domiciled in Travis County at the time of her death. Hanks asserts that venue is proper in Tom Green County because Dianne was domiciled there at the time of her death, or alternatively, because Dianne had no fixed place of residence in Texas at the time of her death, and her principal property was located in Tom Green County. *See* Tex. Prob. Code Ann. § 6(a), (b) (West 2003).

Before reviewing the evidence regarding domicile, we must first address whether Preston has waived his venue challenge. He initially executed an affidavit titled "Proof of Death and Other Facts," when the will was filed for probate in Tom Green County, stating, "Decedent was domiciled and her principal property was located in this county at the date of death." Preston later filed an affidavit stating that his assertion of domicile in Tom Green County had been a mistake and was incorrect. Preston further stated that he was unsure whether he actually read the Proof of Death before he signed it, that he did not review it carefully due to his state of shock over his mother's death, and that he only signed it at Hanks's request.

At the time Preston signed the Proof of Death, he was not a party to the probate proceeding. A judicial admission results when a *party* makes a statement of fact which disproves his right of recovery or defense. *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.). Because Preston was not a party at the time his statement was made, it cannot be used against him in this proceeding as a judicial admission. *See Richards v. Commission for Lawyer Discipline*, 35 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 2000, no pet.). For the same reason, Preston's statement cannot be used against him as a "quasi-

5

admission," which is a *party's* testimonial declaration that is contrary to his position. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

The doctrine of judicial estoppel is also inapplicable to Preston's statements, as judicial estoppel applies only to contradictory positions taken in a subsequent proceeding. *Galley v. Apollo Associated Servs.*, 177 S.W.3d 523, 529 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Because Preston's initial statement was made in the same probate proceeding that he now moves to transfer, he is not judicially estopped from making a contradictory statement.

As an equitable matter, it must be noted that Preston's initial statement was a legal conclusion that he was not qualified to make. *See Duffy v. Cole Petroleum Co.*, 5 S.W.2d 495, 496 (Tex. 1928) (noting that affidavit reciting domicile of parties for venue purposes "merely stated a legal conclusion"). Preston, a lay person, could not be expected to know the legal definition of "domicile" when he stated, "Decedent was domiciled and her principal property was located in this county at the date of death," nor could he be expected to know the legal ramifications of such a statement. Furthermore, Preston was not represented by independent counsel when he signed the Proof of Death, as he was not a party to the probate proceeding at that time. This Court has previously refused "to rely on a lay person's testimony on the legal characterization of property to hold she waived argument as to other legal theories." *Nesmith v. Berger*, 64 S.W.3d 110, 118 n.6 (Tex. App.—Austin 2001, pet. denied). Similarly, we will not rely on Preston's initial statement regarding domicile—a statement made without counsel and at the urging of Hanks who has since brought suit against him—to hold that he waived his argument as to domicile in Travis County. Because Preston's argument has not been waived, we must now look to the evidence regarding domicile.

The evidence before the trial court showed that Dianne maintained a mailing address at her family's office building in San Angelo, located in Tom Green County, which she used for her bank accounts, driver's license, bills, and general business correspondence. Dianne also used the family office building address to register to vote in Tom Green County, although she never actually voted there. While Dianne's income tax returns reflect a Tom Green County address, the address listed is a post office box in San Angelo, rather than a residential location. Furthermore, the income tax returns that can be found in the record, from tax years 2000-2003, indicate that they were prepared by an Austin-based accountant.

Rita Whitt, the Hanks family secretary, testified that the office in Tom Green County was a commercial property used by several members of the family, including Dianne, to transact business and handle correspondence. Whitt further testified that in the five years she had been employed by the family, she never saw anyone sleep overnight at the office building in Tom Green County. Dianne did not own residential housing in Tom Green County at the time of her death.

The record reflects that in 1999, Dianne sold a condominium located in Austin, which she had declared as her residential homestead, and signed a lease at the Mesa Verde apartments, also located in Austin. She also rented three garages at the Mesa Verde apartments for storage purposes. In both the condominium and the Mesa Verde apartment, Dianne used the master bedroom as an office rather than as a sleeping area, in order to deduct the rent and utilities from her taxes as a business expense. In the Mesa Verde apartment, Dianne used a breakfast nook as a sleeping area. She continued to renew the lease on her Mesa Verde apartment until the time of her death, frequently writing letters to Mesa Verde management about how much she enjoyed the premises. She secured homeowners insurance for her possessions at the apartment and stored personal possessions there,

7

including kitchen utensils and cleaning supplies. Affidavits from friends and neighbors reflect that Dianne frequently entertained guests for meals at the apartment and took a great deal of pride in the extensive garden that she had cultivated on the grounds.

In addition to the mailing address at the office in Tom Green County, Dianne also maintained two post office boxes in Austin. While in Austin, Dianne attended counseling services, participated in a six-month course to become certified as a registered massage therapist, and obtained a concealed handgun license. According to Whitt, Dianne only returned to Tom Green County once a year for family business meetings and once for her father's funeral in the five years before her death.

Hanks testified by affidavit that Dianne frequently stayed in hotels, occasionally lived in a Winnebago, and that the family office building in Tom Green County was equipped to hook up an RV. Dianne did own a Winnebago at one time, deducting the mortgage interest on her income tax return as home mortgage interest. However, Whitt testified that Dianne sold her Winnebago in September 2002, and there is no evidence that she ever purchased another one. Hanks and Whitt also testified that Dianne had been working to remodel a ranch house in Pecos County, but the work was not completed at the time of her death.

Duke Wilson, Reute Butler, and Steven Shepherd, personal friends of Dianne, each testified by affidavit that Dianne had expressed to them that she enjoyed living in Austin and would never live in San Angelo again.

The two essential elements of a determination of domicile are "residence in fact" and intent "to make the place of residence one's home." *Texas v. Florida*, 306 U.S. 398, 424 (1939).

8

When a decedent makes statements regarding residence—such as voter registration—that are inconsistent with the facts showing actual residence, such statements "are of slight weight" and cannot establish residence in fact. *Id*. at 425. Instead, the controlling factor is "the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct." *Id*.

In *Texas v. Florida*, a decedent's frequent statements that he was a Texan, including his act of registering to vote in Texas, were insufficient to overcome the evidence showing that his residence in fact was actually Massachusetts—the place where he kept his furnishings and centered his personal activities. *Id*. at 425-26. Similarly, Dianne's use of a Tom Green County mailing address for her driver's license and other business correspondence, as well as her voter registration in Tom Green County, merely amount to conclusory statements that conflict with the facts of her actual residence. While the dissent emphasizes the fact that Dianne's will listed Tom Green County as her domicile, the will—in addition to being a conclusory statement similar to her voter registration and other business correspondence—was executed in 1993, thirteen years before Dianne's death.

The evidence that Dianne slept, gardened, entertained guests, stored her personal possessions, and generally conducted day-to-day activities in Travis County conclusively establishes residence in fact and intent to make the residence her home. Furthermore, there is no evidence to support a finding that Dianne was domiciled in Tom Green County.

In light of the evidence showing that Dianne's fixed place of residence was in Travis County, we disagree with Hanks's alternative argument that venue is proper in Tom Green County, where Dianne's principal property is located, because she had no fixed place of residence

9

in Texas. *See* Tex. Prob. Code Ann. § 6(b) (West 2003). The record reflects that Dianne sold her Winnebago in 2002 and had not purchased another one. Furthermore, while Dianne may have been remodeling a home in Pecos County in order to reside there in the future, an established domicile—in this case, Travis County—is not lost unless she leaves that residence with an intent not to return. *See Commercial Standard Ins. Co. v. Nunn*, 464 S.W.2d 415, 417 (Tex. App.—Texarkana 1971, writ dism'd).

Because there is no evidence establishing Tom Green County as Dianne's domicile at the time of her death and the evidence conclusively establishes Travis County as Dianne's domicile at the time of her death, we find that the trial court's action in denying the motion to transfer pursuant to the mandatory venue provision constitutes an abuse of discretion.

For the foregoing reasons, we conditionally grant Preston's petition for writ of mandamus directing the county court at law to transfer this case to Travis County. The writ will only issue if the trial court fails to act in accordance with this opinion.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson
  Dissenting Opinion Justice Patterson

Filed: March 28, 2008

10