*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00063-CV

James **CARROLL**,
Appellant

v.

Joan **CARROLL**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 1998-CI-09347
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   January 14, 2009

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This appeal arises from a motion to enforce and clarify a divorce decree filed by Appellee,

Joan (Castanon) Carroll.  Appellant James W. Carroll contends the trial judge erroneously

interpreted the divorce decree when he determined the decree granted Joan a 49% interest in his total

retirement pay as opposed to a 49% interest in the community property portion of his retirement pay.

James also contends the trial court inappropriately directed him to apply for and maintain a life

insurance policy in favor of Joan.  We affirm the portion of the trial court's order relating to the life insurance policy.  We reverse the remainder of the trial court's order and remand the cause for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

James and Joan married in 1976.  During their marriage, James was on active duty in the United States Army and accumulated twenty-two years and ten months of service towards his retirement.  On May 26, 1999, James and Joan divorced.  Following the divorce, James continued on active duty and retired on February 1, 2004 with a total of twenty-eight years and one month of service.

A final divorce decree was signed on November 16, 1999, and neither party filed an appeal.  The divorce decree divided the parties' community property interests.  Specifically, the decree awarded Joan a portion of James's military retirement benefits and ordered James to identify Joan as the beneficiary of his Survivor Benefit Plan (SBP), a military death benefit annuity.

The decree first outlined the property awarded to Joan as her sole and separate property.  The decree provides:

> W-5.  All right, title and interest in and to 49[%], determined under the formula set forth below, of the United States Army gross retired pay to be paid as a result of JAMES W. CARROLL's service in the United States Army, and 49% of all increases in the United States Army gross retired pay due to cost of living or other reasons, if, as, and when received.

The decree then outlined the award dealing with the division of military retirement benefits.  The relevant portions of the decree provide:

7. The community interest of JAMES W. CARROLL's monthly gross retired pay subject to being divided by this Court is 100% of the monthly gross retired pay of an [O-5] with 22 years and 10 months of creditable service towards retirement.

8. JOAN CARROLL should be awarded 50% of the community interest in the monthly gross retired pay of an [O-5] with 22 years [and] 10 months of creditable service towards retirement, payable IF, AS and WHEN received by JAMES A. CARROLL.

9. The rest, residue and remainder of said retired pay should be the sole and separate property of JAMES W. CARROLL, except as limited by this order.

Regarding the Survivor Benefit Plan, the decree further provides:

IT IS FURTHER ORDERED AND DECREED that JAMES W. CARROLL shall not, during JAMES W. CARROLL's lifetime, provide, modify, amend, withdraw, or in any other manner alter the election to name JOAN CARROLL as a "former spouse beneficiary" of JAMES W. CARROLL's Survivor Benefit Plan.

Following the divorce, James applied for the Survivor Benefit Plan and designated Joan as the "Former Spouse Beneficiary" when he retired on February 1, 2004. However, his application was denied since more than one year had passed since the divorce decree had been signed and Joan had not filed for a deemed election within one year of the divorce as required by federal law.

On November 16, 2004, Joan filed a motion to enforce and clarify the property division in the divorce decree. After a hearing on the motion, the trial judge signed an order awarding Joan a percentage of the total amount James was receiving for his military retirement pay. The order also directed James to apply for a $1,000,000 life insurance policy for the benefit of Joan in lieu of the Survivor Benefit Plan

James filed a motion for new trial on July 3, 2006, and a second hearing was held on August 18, 2006. On November 5, 2006, the trial court signed an order granting a new trial, and a third

hearing was held on October 18, 2007. Transcripts and evidence were presented at the third hearing; however, no live testimony or evidence regarding the award of retirement pay was presented. The trial court signed another order again basing Joan's percentage of James's military retirement pay on the total amount of the retirement pay he was receiving and requiring James to apply for a life insurance policy in favor of Joan.

### STANDARD OF REVIEW

This case involves the interpretation of a divorce decree and is subject to de novo review. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). To interpret a divorce decree, we apply general rules regarding construction of judgments. *Id*. We read a judgment as a whole to harmonize and give effect to its entire decree. *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). "'If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used.'" *Shanks*, 110 S.W.3d at 447 (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997)). Accordingly, we must enforce a decree as written when the language of the decree is plain and unambiguous. *Id*.

In addition, an enforcement order is limited only to clarifying or aiding the application of a divorce decree. *Pierce v. Pierce,* 850 S.W.2d 675, 679 (Tex. App.—El Paso 1993, pet. denied). Under the Texas Family Code, the court may clarify an order to enforce compliance with a specific decree. TEX. FAM. CODE ANN. § 9.008(b) (Vernon 2006). Yet, a court may not "amend, modify, alter, or change the division of property made or approved in the decree of divorce" with a clarification order. TEX. FAM. CODE ANN. § 9.008(a) (Vernon 2006). Clarification orders cannot be utilized to modify a final divorce decree. *Pierce,* 850 S.W.2d at 680.

## DIVISION OF RETIREMENT

In his first point, James contends the trial court erred by awarding Joan a percentage of his total retirement pay instead of the retirement pay he would have received with twenty-two years and ten months of creditable service, which the trial court found in the decree to be the community interest in the retirement. According to James, the divorce decree unambiguously divides only the community portion of his military retirement pay. Therefore, James contends that the 49% interest awarded to Joan should apply only to the community property portion of his military retirement pay.

Joan responds by directing us to the provision in the final divorce decree that awards her 49% of James's gross retirement pay "plus 49% of all cost-of-living or other increases in the United States Army gross retired pay, on a monthly basis if, as, and when that retirement pay is due to be paid." Joan argues it was the intent of the trial judge to award her a share of all James's retirement pay.

We agree with James. The divorce decree unambiguously awards Joan only a percentage of the community portion of James's military retirement pay; therefore, Joan's 49% interest in James's military retirement pay should be based on the retirement pay of an O-5 grade officer with twenty-two years and ten months of creditable service towards retirement.

The divorce decree first refers to an award to Joan of 49% of James's gross retirement pay that he earned during military service. This provision of the decree also specifies that the 49% should be "determined under the formula set forth below" in the decree. The only formula in the decree that this provision could be referring to is the portion of the decree that defines the community interest of James's monthly gross retirement pay as "the monthly gross retired pay of an [O-5] with 22 years [and] 10 months of creditable service towards retirement." Finally, the decree

orders that Joan should be directly paid "her interest awarded in this decree."

According to the rules of construction, we must consider these provisions as a whole to determine the true intention of the decree. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Here, the clarifying order issued by the trial court failed to fully consider the formula set forth in the decree which restricts Joan's award to the community interest in the retirement, thereby limiting Joan's 49% interest to the "gross retired pay of [O-5] with 22 years [and] 10 months of creditable service towards retirement."

Joan relies heavily on *Shanks v. Treadway* in which the Texas Supreme Court upheld a divorce decree that awarded a wife 25% of her ex-husband's total military retirement benefits. *See Shanks,* 110 S.W.3d at 449. As a result, Joan contends we should uphold the trial court's clarification order that bases her 49% interest on James's total military retirement benefits, including increases earned after the divorce. However, unlike *Shanks*, the divorce decree in this case contains unambiguous qualifying language that specifically identifies what property makes up the parties' divisible community interests. Here, the divorce decree clearly identifies a formula that limits Joan's award to James's gross retirement pay based on an O-5 grade officer with twenty-two years and ten months of service because only that portion of the pay is divisible community property.

Joan also argues that James's remedy for a substantive error of law by the trial court was by direct appeal and that he cannot now collaterally attack the judgment. However, James's appeal is not a collateral attack. Here, the clarification order improperly made substantive changes to the decree by basing Joan's 49% award on James's total military retirement pay rather than by following the formula set forth in the decree and basing Joan's 49% award on the military retirement pay of

"an [O-5 grade officer] with 22 years and 10 months of creditable service towards retirement." In the absence of an ambiguity, the trial court was without authority to modify the judgment via a clarification order; therefore, we must enforce the decree in accordance with its unambiguous language and the intent of the parties. *See Pearcy v. Pearcy*, 884 S.W.2d 512, 514 (Tex. App.—San Antonio 1994, no pet.); *Pierce,* 850 S.W.2d at 681.

## LIFE INSURANCE POLICY

In his second point, James argues the trial court's order inappropriately modified the divorce decree by directing him to apply for and maintain a $1,000,000 life insurance policy in favor of Joan. James argues he made a reasonable effort to comply with the terms of the divorce decree by applying for the Survivor Benefit Plan at the time of his retirement when he was eligible. However, his application was denied because more than one year had passed since the divorce decree had been signed and Joan had not filed for a deemed election within one year of the divorce as required by federal law. As a result, James argues the trial court inappropriately directed him to apply for a $1,000,000 life insurance policy for the benefit of Joan in lieu of the Survivor Benefit Plan.

The record, however, reflects that James agreed to apply for a life insurance policy to replace the Survivor Benefit Plan. During the third hearing, James stated that he understood and agreed that a life insurance policy was to be obtained in lieu of the spousal survivor benefits. Specifically, James's attorney stated, "So, we agreed on the record, Mr. Carroll agreed on the record that he would apply for a life insurance policy at the movant's expense insuring his life to replace the SBP policy. He did send that in, and it was being processed by USAA when this case was—when the new trial was granted." James's attorney continues, "The new policy, Mr. Carroll has already agreed, and we

have passed on to—to the movant, that you know, we have no problem signing that. That's fine. We'll sign it and send it back again. So, there shouldn't be any issue about that." Thus, James agreed that he would apply for a life insurance policy listing Joan as a beneficiary.[1] "It is well settled that a party cannot lead a trial court into error and then complain about it later on appeal." *Hudson v. Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at *6 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.) (citing *Nesmith v. Berger*, 64 S.W.3d 110, 119 (Tex. App.—Austin 2001, pet. denied). Because James invited the alleged error by acquiescing to the disputed issue, we conclude James waived his complaint on appeal regarding the substitution of a $1,000,000 life insurance policy in place of the Survivor Benefit Plan. *See id.* Accordingly, we overrule James's second issue.

## CONCLUSION

We affirm the portion of the trial court's order regarding the life insurance policy. We reverse the remainder of the trial court's order. Because our reversal of the portion of the trial court's order relating to the retirement benefits will require the trial court to recalculate the benefit payments and to reconsider the award of attorney's fees, we remand the cause to the trial court for further proceedings consistent with this opinion.

Rebecca Simmons, Justice

---

[1] While we note that James disputes the amount of the insurance police in his reply brief, we will not address this issue because a party cannot raise a new issue for the first time in a reply brief. *See Pardue v. State*, 252 S.W.3d 690, 703 (Tex. App.—Texarkana 2002, no pet.). "A reply brief should only respond to the arguments in the Appellee's brief." *Id.*