COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-449-CV

 

 

IN THE INTEREST OF J.L.C., A CHILD

 

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

This is an appeal from the
termination of parental rights. 
Following a jury trial in November 2005, the trial court terminated the
parental rights of Teresa C. in her two-year-old daughter, J.L.C.[1]  Teresa complains that the trial court erred
in granting her request for an extension of the dismissal date deadline and
that there is factually insufficient evidence to support the termination of her
parental rights.  We affirm.








 

FACTUAL BACKGROUND

Teresa C. is J.L.C.=s natural mother.  Teresa C.
began using cocaine when she was twenty-seven; she was forty-two at the time of
trial.  She testified that she has been
addicted for most of her life.  Teresa C.
testified that when J.L.C. was born, Teresa C. was addicted to cocaine, and she
and J.L.C. both tested positive for the presence of cocaine in their
systems.  Teresa C. admitted that she had
used cocaine on October 22, 2003, the day that J.L.C. was born.

Teresa C. did not recall how
many times she has been convicted, but she approximated her number of
convictions to be around six.  She
believed she had been convicted three times since J.L.C. was born.  Teresa C. had been arrested for prostitution,
drug possession, criminal trespass, and driving while intoxicated, among other
things. 








On December 18, 2003, nearly
two months following J.L.C.=s birth, Teresa C. was placed on probation for possession of cocaine
and the trial court ordered her to complete the Nexxus Program, where she
obtained inpatient drug rehabilitation treatment and learned about parenting
skills.  Teresa C. admitted that she used
methamphetamine and cocaine during the time period between her completion of
the inpatient treatment at Nexxus in March 2004 and the time of Texas
Department of Family Protective Service=s (TDPRS) removal of J.L.C. from her care on June 12, 2004. 

On June 12, 2004, the child
was removed from Teresa C.=s care due to the risk of exposure to drugs and the criminal activity
associated with Teresa C.=s
prostitution.  On June 14, 2004, TDFPS
filed an original petition for protection of a child, conservatorship, and for
termination in a suit affecting the parent-child relationship.  Despite the treatment that Teresa C. received
from the Nexxus Program, she received a three-year sentence on September 20,
2004, for delivery of a controlled substance. 
She acknowledged that while her child was in the care of TDFPS, she used
drugs, even after she had completed the intensive drug rehabilitation program
offered by Nexxus. 

After her release from
Nexxus, Teresa C. was living with a man named Dennis, and Teresa C.
acknowledged that while the child was in Dennis=s care, she would leave to go do drugs.  At the time that TDFPS removed J.L.C. from
Teresa C.=s care,
Teresa C. and the child were staying in a motel room with a girl who was a
known prostitute.








Teresa C. was released from
prison on October 15, 2005, and began living in a women and children=s treatment center called the Lighthouse Program.  She testified that she was in the first stage
of the three-stage program, and her future plan was to live with her child at
the treatment center.  She is scheduled
to remain on parole until July of 2007.  

Teresa C. named Marion C.,
her second husband, as J.L.C.=s father because she was ashamed that she did not know the true father=s identity. Teresa C. did not know at the time that she named Marion
C. as the father of J.L.C. that he was deceased.  

EXTENSION OF DISMISSAL
DEADLINE

In her first issue, Teresa C.
contends that the trial court improperly extended the dismissal deadline
because it made two mistakes in its oral rendition.  Teresa C. argues that the trial court erred
by failing to make a finding on the best interest of the child and by failing
to enter further temporary orders. Due to these alleged errors, Teresa C.
asserts that the trial court=s May 9, 2005 order granting Teresa C.=s request for an extension and extending the dismissal deadline was
invalid; thus, the trial court should have dismissed TDFPS=s suit pursuant to family code section 263.401(a).  See Tex.
Fam. Code Ann. ' 263.401(a)
(Vernon Supp. 2005).  TDFPS contends that
Teresa C. should be estopped from making any complaint because she requested
the court to grant an extension. 








Section 263.401 of the family
code provides that, unless the trial court has rendered a final order on the
first Monday after the first anniversary of the date the court appointed TDFPS
as temporary managing conservator in a suit affecting the parent‑child
relationship, the court Ashall
dismiss@ a suit filed by TDFPS that seeks the termination of the parent‑child
relationship.  Id.  The version of the statute in effect at the
time provides that the trial court may extend this deadline for up to 180 days
if, by the Monday after the first anniversary date, the court finds that
continuing TDFPS=s conservatorship
of the child is in the child=s best interest and renders an order that complies with section
263.401(b).  Act of May 22, 2001, 77th
Leg., R.S., ch. 1090, ' 8, 2001 Tex.
Gen. Laws 2395, 2396 (amended 2005) (current version at Tex. Fam. Code Ann. ' 263.401(b) (Vernon Supp. 2005)). 

To render an order that
complies with section 263.401(b), the trial court is required to schedule a new
date for dismissal of the suit, make further temporary orders for the safety
and welfare of the child as necessary to avoid further delay in resolving the
suit, and set a final hearing on a date that allows the court to render a final
order before the required date for dismissal of the suit.  Id. 
If the trial court grants an extension, but does not render a final
order within the 180‑day period, it must dismiss the suit.  Id. 
Section 263.401(b) simply requires the court to Arender@ an
extension order.  Id.  It does not require that the order be
written.  In re B.T., 154 S.W.3d
200, 206 (Tex. App.CFort Worth
2004, no pet.).








On June 14, 2004, TDFPS was
named temporary managing conservator of J.L.C. 
On April 26, 2005, Teresa filed a motion for continuance and extension
of dismissal date, asking the trial court to extend the dismissal date so that
she could Acomplete
Texas Department of Criminal Justice and Texas jail facility programs and be
released before trial and obtain employment, obtain housing for herself and the
child, and otherwise participate in [TDFPS] provided services.@  She also requested that the
court grant the extension so that a home study could be completed before trial,
so that any placement made in the home could be considered in the court=s determination regarding best interests of the child and the
termination of parental rights.

On May 9, 2005, the trial
court held a hearing on Teresa C.=s motion to extend the dismissal deadline.  At the hearing, the trial court orally
granted the motion, extended the deadline until December 17, 2005, and set the
trial date for October 19, 2005. 
Likewise, the trial court=s docket sheet entry shows that the motion was granted, extends the
deadline until December 17, 2005, and sets the trial date for October 19, 2005.








On June 21, 2005, TDFPS filed
a motion to enter judgment based upon the May 9, 2005 hearing.  The trial court=s docket sheet reflects that the trial court held a hearing on the
motion on August 10, 2005.  The court
noted in the docket entry that arguments were heard, evidence was presented,
and the matter was taken under advisement. 
At the August 10, 2005 hearing, the district attorney who represented
TDFPS at the May 9, 2005 hearing testified that he did not recall whether a
record was made of the May 9, 2005 hearing and he believed that the judge made
a specific finding that the continuation of TDFPS as temporary managing
conservator was in the child=s best interest.  The district
attorney also testified that the trial court signed a formal order confirming
the extension of the deadline, but the signed order was never filed with the
clerk of the court because it was misplaced. 
Teresa=s C.=s attorney also testified at the hearing, asserting that he had no
recollection that the trial court made any specific findings or comments
regarding the continuation of TDFPS as managing conservator as being in the
best interest of the child.  He thought
that he had made an argument regarding the best interest of the child, but the
trial court did not make a finding on best interest.  








On August 15, 2005, the trial
court signed an order extending the dismissal date, setting hearing dates, and
finding that the appointment of TDFPS as temporary managing conservator
continued to be in the best interest of the child.  The order states that a hearing on Teresa C.=s motion for extension of the dismissal date was held on May 9, 2005,
and on that day, A[t]he Court
approved of [Teresa C.=s] requested
relief and rendered it=s [sic]
decision, extending the dismissal date to December 17, 2005, and set the final
trial date for a jury trial on October 19, 2005.@ 

A party who requests the
trial court to reset the trial date beyond the original one‑year deadline
set out in 263.401(a) has agreed to an extension under section 263.401(b).  B.T., 154 S.W.3d at 206.  Additionally, a party who requests relief
cannot complain on appeal if that relief is granted.   Ne. Tex. Motor Lines, Inc. v. Hodges,
138 Tex. 280, 158 S.W.2d 487, 488 (1942); Nesmith v. Berger, 64 S.W.3d
110, 119 (Tex. AppCAustin 2001,
pet. denied).  Teresa C. filed a motion
for continuance and extension of the dismissal date, requesting that the court
extend the dismissal date so that she could Acomplete the Texas Department of Criminal Justice and Texas jail
facility programs and be released before trial and obtain employment, obtain
housing for herself and the child, and otherwise participate in [TDFPS]
provided services.@  Because Teresa C. requested that the trial
court grant the extension under 263.401(b), 
she agreed to the extension, and she cannot now complain on appeal
because the relief she requested was granted. 
Accordingly, we overrule Teresa C.=s first issue.

BEST INTEREST OF THE CHILD

In her second issue, Teresa
C. complains that the evidence is factually insufficient to show that
termination was in the child=s best interest.  








1. Standard of Review

A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d
534, 547 (Tex. 2003). AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b) (Vernon Supp. 2005); Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20-21; In re E.S.S., 131 S.W.3d 632,
636 (Tex. App.CFort Worth
2004, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child.  TEX. FAM. CODE ANN. ' 161.001
(Vernon 2002); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). 
This intermediate standard falls between the preponderance standard of
ordinary civil proceedings and the reasonable doubt standard of criminal
proceedings.  In re G.M., 596
S.W.2d 846, 847 (Tex. 1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








This higher burden of proof
elevates the appellate standard of factual sufficiency review.  C.H., 89 S.W.3d at 25.  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  C.H., 89 S.W.3d at 25.  In considering whether the evidence of
termination rises to the level of being clear and convincing, we must determine
whether the evidence is such that a factfinder could reasonably form a firm
belief or conviction that the grounds for termination were proven.  Id. 
Our inquiry here is whether, on the entire record, a factfinder could
reasonably form a firm conviction or belief that the parent violated one of the
conduct provisions of section 161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  Id. at 28.

The distinction between legal
and factual sufficiency lies in how we review the evidence.  J.F.C., 96 S.W.3d at 266.  In a factual sufficiency review, in
determining whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction that its finding was true, we must consider
whether disputed evidence is such that a reasonable factfinder could not have
resolved it in favor of the finding.  Id.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  Id.








Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include the following:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future; 

 

(3)    the emotional and physical danger to the child now and in the
future; 

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976).  These factors are not exhaustive; some listed
factors may be inapplicable to some cases, and other factors not on the list
may also be considered when appropriate. 
C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in
a particular case to support a finding that termination is in the best interest
of the children.  Id.  On the other hand, the presence of scant
evidence relevant to each Holley factor will not support such a
finding.  Id.

2. The Desires of the Child

J.L.C. was two years old at the time the trial began on November 16,
2005.  When she was born, J.L.C. tested
positive for cocaine.  J.L.C. began
living with a foster family when she was eight months old.  J.L.C.=s foster mother testified
that J.L.C. has bonded with her foster family. 
According to the child advocate, J.L.C.=s
foster family appears to offer a safe and loving environment in which the child
is a happy, healthy, and thriving two-year-old girl who has bonded with her
foster family, which includes a two-year-old foster brother.  She calls her foster parents Amommy@ and Adaddy.@  J.L.C. has a room in her foster home that she
calls her room.  The child advocate
stated that J.L.C. cries and reaches for her foster mother during her
transition to TDFPS staff at the beginning of visits.  The foster family would like to adopt
J.L.C.  J.L.C.=s
foster mother testified that J.L.C. has no relationship with Teresa C., and
Teresa C. is a stranger to J.L.C.

 

3. The Emotional and Physical
Needs of the Child Now and in the Future

A psychologist who conducted
a psychological examination of Teresa C. observed that her Apast behaviors paint a picture of a woman who has had difficulty
putting the needs of her child first due to her addiction to drugs.@








4. The Emotional and Physical
Danger to the Child Now and in the Future 

The record shows that J.L.C.
has been exposed to dangers associated with Teresa C.=s behavior.  Teresa C. used
drugs while she was pregnant with J.L.C., and J.L.C. tested positive for
cocaine, methamphetamines, and barbituates at birth.  Teresa C. was arrested for prostitution on
two occasions, and, although she testified that she did not know it at the
time, she did leave the child in the care of a known prostitute.  Furthermore, Teresa C. continued to use drugs
after TDFPS removed J.L.C. from her care. 
The psychologist who conducted Teresa C.=s psychological examination stated that A[i]t is unclear to this examiner whether [Teresa C.] will be able to
maintain her sobriety when she is not in a controlled environment, given that
she has relapsed in the past.@








Teresa C. testified that from
1990 to the present time, her main source of income was from dancing in topless
clubs.  She testified that the last time
she had Alegal@ employment
was in 1993, when she worked for a fast food restaurant.  Although she was not employed at the time of
trial and was not seeking employment at the time, she stated that she
eventually planned to look for a data entry position.  She had received data entry training while in
jail.  She testified that throughout her
entire life, she has never had an apartment listed in her name and at points in
her life, she has been homeless.  The
child advocate expressed that  Teresa C. Ahas failed to prove her ability to establish or maintain a safe or
stable home for her daughter when she has had many opportunities to do so.@

5.  The Parental Abilities of the Individuals
Seeking Custody 

The record establishes that
Teresa C. has been involved in a life of crime, unemployment, homelessness, and
drug addiction.  She was attempting to
overcome her drug addiction, and she attended parenting classes through drug rehabilitation
programs.  J.L.C. was Teresa C.=s first child.  Following J.L.C.=s birth, Teresa C. continued to engage in drug use.

6.
The Programs Available to Assist These Individuals to Promote the Best Interest
of the Child

 

Teresa C. was involved in the
Lighthouse program following her release from jail.  Through this program, she attended parenting
classes and a drug rehabilitation program. 
Additionally, Teresa C. testified she was interested in joining the
Exodus program, a Christian-based program designed to help a mother and child
to reenter society.   

7. The Plans for the Child by
These Individuals Seeking Custody








Teresa C.=s plan for the child was to extend her drug treatment program and then
have the child live with her in a Christian house, Exodus, that helps a mother
and her child to reenter society.  Teresa
C. planned to look for employment performing data entry work.  TDFPS=s plan for the child was to pursue termination of Teresa C.=s parental rights and adoption by the foster family.

8. The Stability of the Home
or Proposed Placement

The record indicates that
Teresa C. could not provide a stable home for J.L.C.  She had never rented an apartment in her own
name, and she had been homeless at various stages of her life.  Additionally, the child advocate noted that
Teresa C. Ahas failed
to prove her ability to establish or maintain a safe or stable home for her
daughter when she has had many opportunities to do so.@ A trial court can measure the future conduct of parents by their
recent past conduct, and it  is not
required to believe that there has been a lasting change in a parent=s attitude since his or her children were taken.  In re K.A.S., 131 S.W.3d 215, 229-230
(Tex. App.CFort Worth
2004, pet. denied).








The child was secure in her
temporary placement with her foster family. 
While in foster care, J.L.C. began to walk and talk, and she has bonded
with her foster family.  She calls her
foster parents Amommy@ and Adaddy.@  J.L.C. has a room in her
foster home that she calls her room.  The
child advocate explained that the foster family provided a safe and loving
environment for J.L.C., and J.L.C. is happy and healthy.  While in the foster home, J.L.C. attended
daycare, but her foster mother has since left her job to be at home with J.L.C.
and her foster brother.  The foster
parents expressed their desire to adopt J.L.C. 


9.
The Acts or Omissions of the Parent Which May Indicate that the Existing  Parent‑Child Relationship is Not a
Proper One and Any Excuse for the Acts or Omissions of the Parent 

 

By her own admission, Teresa
C. is a long-term drug user.  She
acknowledged that the primary person who was hurt by her drug addiction was the
child.  She used drugs while she was
pregnant with J.L.C. and after J.L.C.=s birth.  Her excuse for her
drug use was that she did not understand the concept of her addiction. 

10. The Child=s Best Interest

Based on the foregoing, we
hold that a rational factfinder could reasonably form a firm conviction or
belief that the termination of Teresa C.=s parental rights would be in the best interest of the child.  Accordingly, we overrule Teresa C.=s second issue.

DISCUSSION

Having overruled each of
Teresa C.=s two
issues, we affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
F:  HOLMAN, WALKER, and MCCOY, JJ.

 








DELIVERED:  May 18, 2006











[1]To
protect the privacy of the parties involved in this appeal, we identify the
child by initials only and Appellant by first name and initial.  See Tex.
Fam. Code Ann. '
109.002(d) (Vernon 2002).