**Shawni VALDEZ and Dan Hennigan, Appellants,**

v.

**Adam VALDEZ, Domingo Valdez and Elvira Valdez, Appellees.**

No. 01–94–00828–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 15, 1996.

726

Dan Hennigan, Houston, for appellants.

Leonel Torres, Alvin, Jeannette G. Shane, Manvel, for appellees.

Before SCHNEIDER, C.J., and ANDELL and HEDGES, JJ.

## OPINION

HEDGES, Justice.

Shawni Valdez (mother) and Dan Hennigan, her attorney, appeal a judgment rendered in favor of appellees Adam Valdez (father), and Domingo and Elvira Valdez (grandparents), in an action to modify in a suit affecting the parent-child relationship. The mother and Hennigan bring 12 points of error, contending that the trial court erred in: (1) awarding sanctions against the mother and Hennigan; (2) removing the mother as managing conservator; (3) making findings that support the mother's removal as managing conservator; (4) appointing the father as primary joint managing conservator; (5) ordering the mother to pay the father's and the grandparents' attorneys' fees; and (6) ordering the mother to pay expert testimony fees to the father's and the grandparents' expert. We (1) reverse and render in part, and (2) modify, and, as modified, affirm in part.

### Facts

The mother and father were divorced on July 13, 1992. The mother was designated primary joint managing conservator, and the father and grandparents were named joint managing conservators of the child of the marriage, Kristee Leigh Valdez, then five years old.

On June 26, 1993, the grandparents filed a motion to modify in the suit affecting the parent-child relationship, and the father filed a cross-motion for modification. Following a hearing on August 12, 1993, the trial court entered temporary orders in which the father was named temporary primary joint managing conservator of the child. The mother and the grandparents were named temporary joint managing conservators with assigned visitation rights.

On March 10, 1994, the grandparents filed a motion for sanctions against the mother based on discovery abuse. The mother and her counsel failed to appear at the hearing on the sanctions motion held March 31, 1994. Pursuant to TEX.R.CIV.P. 215(3), on April 8,

1994, the trial court imposed sanctions on the mother or her counsel of $1391.70, and struck the mother's pleadings.

On May 17, 1994, the trial court heard the father's cross-motion to modify in the suit affecting the parent-child relationship. The mother and her counsel appeared at the first docket call, and all parties had a conference in chambers. At that conference, the trial judge ordered all parties to return at 1:30 p.m. the same day for a final hearing. When the mother and her counsel did not appear at 1:30 or thereafter, the proceeding was heard, and the trial court issued its orders.

On June 9, 1994, the mother filed a motion to set aside the sanctions imposed in the April 8 order. The court set a June 30, 1994, hearing on the mother's motion.

On June 30, the hearing on the mother's motion to set aside the sanctions was held. The mother and her attorney did not appear. The trial court dismissed the mother's June 9 motion to set aside the sanctions and ordered the mother or her attorney to pay $1500 in attorney's fees to the grandparents' attorney and $1500 in attorney's fees to the father's attorney.

On July 18, 1994, the mother filed a motion seeking to set aside the June 30 order. On July 26, 1994, the trial court set aside the June 30 order only as to the award of attorney's fees. The July 26 order left in place the sanctions imposed in the April 8 sanctions order.

### Attorney's Fees as Sanctions against Hennigan

In point of error one, Dan Hennigan, attorney for the mother both at trial and on appeal, contends that the trial court erred in imposing sanctions against him without notice that he was at risk of such penalty. Nowhere in the grandparents' motion for sanctions is there a request for sanctions against Dan Hennigan. Rather, the motion requests sanctions only against the mother. Hennigan argues that sanctions imposed without notice are invalid because they violate the due process clause of the United States Constitution.

Although Hennigan did file a motion to set aside the sanctions order on behalf of the mother, he filed no motion on his own behalf. Nor does the motion he filed on behalf of the mother notify the trial court that Hennigan was himself also complaining about the sanctions in the same motion as the mother's. The text of the motion he filed for the mother begins by stating, "COMES NOW, Movant, SHAWNI VALDEZ, and in support of this motion would show as follows." In neither the style nor the text of the motion are the sanctions against Hennigan even mentioned.

■■■ We hold that Hennigan has waived this complaint on appeal because he never complained of the sanctions against him to the trial court, and thus he never gave the trial court the opportunity to correct the alleged error. He never complained to the trial court that he had no notice that sanctions could be imposed against him; the first time this complaint is made is on appeal. Under Texas Rule of Appellate Procedure 52(a), in order to preserve a complaint for appellate review, a party must have presented a request, objection, or motion to the trial court stating specific grounds for the ruling desired. TEX.R.APP.P. 52(a). A ruling from the trial court on the request, objection, or motion must be obtained. *Id.* This rule applies, *inter alia,* to constitutional challenges. *See, e.g., City of San Antonio v. Schautteet,* 706 S.W.2d 103, 104 (Tex.1986) (per curiam); *Cannon v. Lemon,* 843 S.W.2d 178, 183 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ We are not holding that Hennigan was required to file a separate motion on his own behalf to preserve error. His joining the mother's motion would have sufficed. But, because he took neither option, he has not preserved error.

We overrule point of error one.

### Sanctions against the Mother

In point of error two, the mother contends that the trial court erred in awarding sanctions against her because "notice of sanctions ordered to be given by the trial court was never given."

In an order dated March 11, 1994, the trial court set a hearing date of March 31 on the grandparents' motion for sanctions and ordered that "the clerk will issue notice to Respondent [the mother]." In its order on motion for sanctions dated April 8, 1994, the trial court found that "reasonable notice of hearing date on motion for sanctions was given to Disobedient Party's Attorney." [1]

In her motion to set aside order on motion for sanctions, filed on June 9, 1994, the mother complained to the trial court that she did not receive notice of the March 31 hearing from the court clerk. The trial court set a hearing on her motion for June 30, 1994. In its June 30, 1994, order on the mother's motion to set aside sanctions, the trial court found that neither the mother nor her attorney appeared at the June 30 hearing, dismissed the mother's June 9 motion, and ordered the mother to pay additional attorney's fees.[2] There is no record of the March 31 hearing in the statement of facts.

■ It was the mother's burden to establish on the record that she did not receive notice of the sanctions hearing held on March 31, 1994. *See HBA East, Ltd. v. JEA Boxing Co., Inc.,* 796 S.W.2d 534, 539 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Because she failed to appear at the June 30 hearing, which was to decide the mother's complaint that she did not receive notice of the March 31 hearing, the mother cannot present a record that would support this point. No evidence in the record supports it, and the mother failed to appear at the hearing that would have afforded her a chance to present favorable evidence on the issue.

We overrule point of error two.

1. In her brief, the mother states that she "does not contend that she should have been personally served since Rule 21 T.R.C.P. provides that service may be had on her attorney of record."

2. On July 18, 1994, the mother filed a motion to set aside order on motion for sanctions, seeking to set aside the June 30 order. On July 26, 1994, the trial court entered mutually agreed orders wherein the court set aside the June 30 order *only as to the award of attorney's fees against the mother and her attorney.* The July 26 order specifically states that "the Order entered on June 30, 1994, be and the same hereby is set aside *as to the award of attorney fees against Shawni Valdez and her Attorney of Record, Mr. Dan Henni-*

**Texas Family Code Section 14.081(2)(d)**

■ In point of error seven, the mother contends that the trial court erred in removing Shawni Valdez as joint managing conservator under Tex.Fam.Code Ann. § 14.081(2)(d) for the reason that there is no section 14.081(2)(d) of the Family Code.

The orders on cross-motion to modify state that "the court on its own motion as provided by Section 14.081(2)(d) of the Texas Family Code, ORDERED that SHAWNI VALDEZ be removed as a Joint Managing Conservator and the Court ORDERED that SHAWNI VALDEZ be appointed as Possessory Conservator of the Child." The order should properly have been granted under former Tex.Fam.Code Ann. § 14.081(d) (Vernon Supp.1995).[3] Because it is obvious that the trial court committed a clerical error, we will modify the judgment of the trial court by correcting the reference to the specific Family Code section. Tex.R.App.P. 80(b)(2).

### Welfare of the Child and Circumstances of Managing Conservator

In points of error three through six, appellant challenges the legal and factual sufficiency of the evidence to support the findings that (1) the welfare of the child was a matter of serious and immediate concern and (2) the circumstances of the child and of the managing conservator, Shawni Valdez, had substantially changed since the rendition of the original custody decree.

Tex.Fam.Code Ann. § 14.081(d) (Vernon 1995) provided that:

*gan."* (Emphasis added.) The July 26 order leaves in place the sanctions against the mother imposed in the April 8 order of sanction. *It is those sanctions that form the basis of this point of error.*

3. Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 9, 1987 Tex.Gen.Laws. 2671 and Act of May 26, 1989, 71st Leg., ch. 371, § 7, 1989 Tex.Gen. Laws 1465, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch 20, § 2(1), 1995 Tex.Gen.Laws. 282, eff. April 20, 1996. This cause is governed by former section 14.082, which was in effect when the proceeding was commenced, and is referred to in this opinion as Tex.Fam.Code Ann. § 14.081 (Vernon Supp.1995).

After a hearing, on the motion of one or both of the joint managing conservators or on the court's own motion, a court may replace a joint managing conservatorship with a sole managing conservatorship if:

(1)(A) the welfare of the child is a matter of immediate and serious concern;

(B) there has been a substantial and unexcused violation of the terms and conditions established in the existing conservatorship decree; or

(C) the circumstances of the child or of one or both of the joint managing conservators have so materially and substantially changed since the rendition of the decree that it has become unworkable or inappropriate under existing circumstances; and

(2) the appointment of a sole managing conservator would be for and in the best interest of the child.

On May 31, 1994, the trial court entered its orders on "Cross–Motion to Modify in Suit affecting the Parent–Child Relationship:"

The Court, having considered the circumstances of the parents and of the child, finds the following orders are in the best interest of the child:

The Court finds that the material allegations contained in Cross–Movant's Cross–Motion to Modify in Suit Affecting The Parent Child Relationship are true and correct and that the requested modification is in the best interest of the child. The Court finds that the circumstances of the child and of the joint managing Conservator, SHAWNI VALDEZ, have substantially changed since the rendition of the decree to be modified.

The Court further finds that a modification of the terms and conditions of the decree would be a positive improvement for and in the best interest of the child. IT IS ORDERED that the motion is *GRANTED.*

The Court finds that the welfare of the child is a matter of immediate and serious concern; there has been substantial and unexcused violation of the terms and conditions established in the existing conservatorship.

The Court finds that the best interest of the child would best be served if **Adam Valdez** is appointed **Primary Joint Managing Conservator.**

IT IS ORDERED that Adam Valdez is appointed Primary Joint Managing Conservator of the child.

IT IS FURTHER ORDERED that DOMINGO VALDEZ, ELVIRA VALDEZ are appointed Joint Managing Conservators of the child.

The Court on its own motion as provided by Section 14.081(2)(d) [sic] of the Texas Family Code, ORDERED that SHAWNI VALDEZ, be removed as Joint Managing Conservator and the Court ORDERED that SHAWNI VALDEZ be appointed as Possessory Conservator of the Child.

 In reviewing legal sufficiency or "no evidence" points, the reviewing court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregards all evidence and inferences to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). In a factual sufficiency challenge, we first examine all the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). After considering and weighing all the evidence, we set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

The record reveals the following evidence:

 The mother disobeyed the trial court's order to attend the afternoon session of the hearing on modification. The mother disobeyed the court's order to notify the court of her current address.

The mother testified that the child was not living with her but with her maternal grandmother who had no court-ordered rights to the child. The child had lived with her maternal grandmother since the divorce, but the mother had not lived there for 11 months preceding the hearing.

The mother had been employed as a waitress at Tropicana, a topless club, for about a year. Previously, she had been a dancer at

I–10, also a topless club, and at several other clubs around the city since the divorce. She had served six months of a six-year felony probation at the time of the hearing.

This evidence is both legally and factually sufficient to support the trial court's findings that the welfare of the child is a matter of immediate and serious concern and that the circumstances of the managing conservator, Shawni Valdez, and the child have substantially changed since the rendition of the decree.

We overrule points of error three through six.

### Removal of Wife and Appointment of Husband as Managing Conservator

In points of error eight and nine, the mother contends that the trial court erred in removing her as joint managing conservator of the child and in appointing the father as primary joint managing conservator of the child.

Section 14.081 of the Family Code stated, in pertinent part:

(c) After a hearing, the court may modify the terms and conditions of an existing joint managing conservatorship if:

(1)(A) the circumstances of the child or one or both managing conservators have materially and substantially changed since the rendition of the decree to be modified; or

(B) the decree has become unworkable or inappropriate under existing circumstances; and

(2) a modification of the terms and conditions of the decree would be a positive improvement for and in the best interests of the child.

Tex.Fam.Code Ann. § 14.081(c) (Vernon Supp.1995).

We interpret this statute as granting the trial judge discretionary power to modify a joint conservatorship, but only when the two criteria are met. The proper standard of review in the appellate court is abuse of discretion. *See Thompson v. Thompson*, 827 S.W.2d 563, 566–67 (Tex.App.—Corpus Christi 1992, writ denied).

In determining whether the trial court abused its discretion, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate justice in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland*, 862 S.W.2d 762, 776 (Tex.App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In this case, the record reflects ample evidence supporting the removal of the mother as joint managing conservator of the child. The deposition of Dr. Lynn Malseed, a pediatrician and child and adolescent psychiatrist who evaluated the child, was introduced into evidence. She testified about possible sexual molestation of the child, while under the mother's care, by a male relative of the mother. She further testified to traumatic events, including "corporal discipline," taking place while under the mother's care at the maternal grandmother's house. She opined that it was in the child's "best interest if the overnight visits [with her mother] were curtailed at this point in time because she's so apprehensive and afraid of them."

We overrule points of error eight and nine.

### Payment of Attorney's Fees

In points of error 10 and 11, the mother contends that the trial court erred in order-

ing her to pay $1,500 in attorney's fees to the father's counsel and $1,500 in attorney's fees to the grandparents' counsel for the reason that there is no evidence that the awarded amounts are reasonable. No evidence on the reasonableness of the attorney's fees was introduced.

The father argues the award should be affirmed based on section 38.004 of the Civil Practice and Remedies Code, citing *Matelski v. Matelski*, 840 S.W.2d 124 (Tex.App.—Fort Worth 1992, no writ). *Matelski* was an action before the court to enforce and clarify a divorce decree. *Id.* at 125. The appellant attacked the award of attorney's fees on the ground that there was no evidence that the amount of attorney's fees found by the trial court was reasonable. *Id.* at 130. The court of appeals upheld the award of attorney's fees under TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986). *Id.* Section 38.004 provides that "[t]he court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in: (1) a proceeding before the court...." TEX.CIV. PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986).

Similarly, in *In re Estate of Kidd*, 812 S.W.2d 356 (Tex.App.—Amarillo 1991, writ denied), an action before the court concerning the imposition of sanctions in a will contest, the appellant complained that there was no testimony to support the award of attorney's fees. *Id.* at 359. The appellate court upheld the award of attorney's fees under section 38.004. *Id.*

■ This case, like *Matelski* and *Kidd*, was a proceeding that (1) was before the court, and (2) involved a claim that did not fall under TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). But we disagree with the holdings in *Matelski* and *Kidd* that section 38.004 applies. Instead, we hold that section 38.004 does not permit a trial court to take judicial notice of the reasonableness of attorney's fees.

Section 38.001 sets out a list of the types of cases in which reasonable attorney's fees may be recovered. TEX.CIV.PRAC. & REM. CODE ANN. § 38.001 (Vernon 1986). Under section 38.004(1), a court may take judicial notice of the usual and customary attorney's fees in a proceeding before the court. TEX.CIV.PRAC. & REM.CODE ANN. § 38.004(1) (Vernon 1986). Section 38.003 establishes a presumption that "the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." TEX.CIV.PRAC. & REM.CODE ANN. § 38.003 (Vernon 1986).

*Citing section 38.004*, the *Matelski* court held that "[i]n a trial before the court, the trial court may review the case file and take judicial notice of the amount of reasonable attorney's fees, whether or not requested by a party to do so." 840 S.W.2d at 130. Section 38.004, however, does not address reasonableness, only the "usual and customary" attorney's fees. TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986). We disagree with the *Matelski* holding based on our reading of this section. Because section 38.004 does not address the *reasonableness* of attorney's fees, it cannot be proper authority that the trial court can take judicial notice of the reasonableness of the amount of attorney's fees.

It is section 38.003, not section 38.004, that addresses reasonableness. That section states that the usual and customary attorney's fees are presumed reasonable *only for a type of claim listed in section 38.001*. TEX. CIV.PRAC. & REM.CODE ANN. § 38.003 (Vernon 1986). Therefore, because the claim in *Matelski*—an action to enforce and clarify a divorce decree—was not a claim of the type listed in section 38.001, there should have been no presumption that the fees were reasonable. The one section that permits such a presumption—section 38.003—is limited on its face to the types of claims listed in section 38.001, and that list does not include an action to enforce and clarify a divorce decree.

*Kidd* concerned the imposition of sanctions in a will contest, 812 S.W.2d at 357, which is also not a claim listed in section 38.001. The court focused its analysis on section 38 and held that, "[b]ecause the trial court's imposition of sanctions was presumptively based on judicial notice of reasonable attorney's fees, *the sanctions were supported by sufficient evidence....*" *Id.* at 359. But because the

list in section 38.001 does not include the type of claim brought in *Kidd,* there should have been no presumption in *Kidd* that the fees were reasonable.

We respectfully disagree with *Matelski* and *Kidd.* Instead, we endorse the holding in *Richards v. Mena,* 907 S.W.2d 566 (Tex. App.—Corpus Christi 1995, writ dism'd by agr.), in which the court recognized the distinction in section 38 between "usual and customary" and "reasonable" and held that "[s]ection 38.004 standing alone does not provide any statutory assistance in proving the 'reasonableness' issue." *Id.* at 573. We agree with the *Richards* court that "38.004 cannot be used to justify the reasonableness of attorney's fees and 38.003 cannot be used outside of a 38.001 action." *Id.* at 574.[4]

 We sustain points of error 10 and 11.[5]

### Expert Fees

 In point of error 12, the mother contends that the trial court erred in ordering her to pay $1,250 taxed as reasonable expert testimony fees of Dr. Malseed because there is no evidence that this amount is reasonable.

Nothing in the record proves the amount charged by or paid to Dr. Malseed. Even if the amount charged and/or paid had been established, that proof would have not raised an issue of reasonableness. Recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable. *Pelham Mfg. Co. v. Ridlehuber,* 356 S.W.2d 502, 503 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.). The only two witnesses to testify at trial were the father and the paternal grandfather, neither of whom was qualified to prove up the reasonableness

of Dr. Malseed's fees. There is no evidence in this record that the fees were reasonable.

We sustain point of error 12.

### Conclusion

We reverse the portion of the judgment that awards $1,500 in attorney's fees to the father's counsel and $1,500 in attorney's fees to the grandparents' counsel and render judgment that no attorney's fees be awarded. We reverse the portion of the judgment that awards $1,250 taxed as court costs for expert testimony fees of Dr. Malseed and render judgment that no expert fees be awarded. We modify the remainder of the judgment only to correct the reference to "Tex.Fam.Code Ann. § 14.081(2)(d)" to read "Tex.Fam.Code Ann. § 14.081(d)," and, as so modified, we affirm the remainder of the judgment.

---

4. Like *Matelski* and *Kidd,* the claim in *Richards v. Mena* was not "of the type described in Section 38.001[.]" *See* Tex.Civ.Prac. & Rem.Code Ann. § 38.003 (Vernon 1986).

5. In so doing, we are mindful that section 38 should be liberally construed. Tex.Civ.Prac. & Rem.Code Ann. § 38.005 (Vernon 1986). Liberal construction, however, does not mean reading section 38.004 to include the element of reasonableness as something the trial court may judicially notice when the plain language of that section only states that the trial court may judi-

cially notice "the usual and customary attorney's fees" and "the contents of the case file." Attorney's fees that are "usual and customary" are not automatically "reasonable," as well. *See* Tex.Civ. Prac. & Rem.Code Ann. § 38.003 (Vernon 1986) (stating that, in cases "described in Section 38.001," the usual and customary attorney's fees are *presumed* to be reasonable, not that they are per se reasonable); *Richards,* 907 S.W.2d at 573 (treating "usual and customary" and "reasonableness" as separate issues).