

NUMBER 13-11-00472-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

IN THE INTEREST OF C.B. AND J.B., CHILDREN

On appeal from the 135th District Court
of Victoria County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez

In this suit affecting the parent-child relationship, appellant, Beatrice Rubio, appeals by four issues the trial court's order granting appellee, Jason M. Burmeister, the exclusive right to designate the primary residence of the couple's two children. We affirm.

I. BACKGROUND

Appellant and appellee were divorced in Victoria, Texas in 2005. The divorce decree designated appellant and appellee joint managing conservators of their two

minor daughters, C.B. and J.B. At that time, appellant was granted the exclusive right to designate the primary residence of the children. Subsequently, appellant moved with the children from Victoria to Albuquerque, New Mexico.

The case was reopened in 2006, after C.B. made an outcry of sexual abuse by appellant's boyfriend, Lonnie Taylor. In 2007, the court ordered appellant to return C.B. to Victoria to reside with appellee. J.B. continued to reside with appellant in Albuquerque until 2009, when the parties agreed to an order that gave appellee the exclusive right to designate the primary residence of both children. Thereafter, J.B. returned to Victoria to reside with appellee.

The case was reopened again in 2010, when appellee filed a petition to modify the parent-child relationship, alleging that the children had been "emotionally abused" by appellant and requesting that appellant be limited to supervised visitation with the children because of the "danger of further emotional abuse." Subsequently, appellant filed a counter-petition to modify the parent child relationship, requesting that the court grant her the exclusive right to designate the primary residence of the children.

A bench trial was held on February 7 and 8, 2011. The court heard testimony from eight witnesses: (1) Sherry Yvonne Chambliss, C.B.'s counselor; (2) Kim Stanfield, J.B.'s counselor; (3) appellant; (4) Maria Rodriguez, appellant's cousin; (5) appellee; (6) Leticia Garza, appellant's aunt; (7) L.G., appellant's 14-year-old son and half-brother to C.B. and J.B.; and (8) Kim Frost, appellant's attorney (on the issue of attorney's fees). Although appellant made two requests that the trial court interview C.B. in chambers, both requests were denied.

2

The trial court ruled that "based upon the credible evidence that the Court has heard [appellee] should have the authority to designate the [primary] residence of the children." This appeal ensued.

## II. ANALYSIS

### A. Issue One

In her first issue, appellant complains that "the entire record reveals that the trial court erred and abused its discretion in determining the best interest of C.B. and J.B."

### 1. Standard of Review

In determining which joint managing conservator will have the exclusive right to establish the primary residence of the children, the trial court is vested with broad discretion. *See In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.); *see also D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) ("We review a trial court's decision regarding custody, control, and possession matters involving a child under an abuse of discretion standard."). The trial court's judgment will be disturbed only where the record as a whole shows that the trial court abused its discretion. *Strong v. Strong*, 350 S.W.3d 759, 765 (Tex. App.—Dallas 2011, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)); *see also Pena v. Pena*, 8 S.W.3d 639, 639 (Tex. 1999) (per curiam) ("[T]he trial court is vested with wide discretion in determining custody issues.").

3

A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). A trial court does not abuse its discretion when it makes a decision on conflicting evidence. *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.—Dallas 2003, no pet.). If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.); *see also In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In this case, the trial court did not file findings of fact and conclusions of law. Therefore, it is implied that the trial court made all the necessary findings to support its final order. *See Burns*, 116 S.W.3d at 920. The judgment will be upheld on any legal theory that finds support in the evidence. *Strong*, 350 S.W.3d at 765; *see also In re A.N.O.*, 332 S.W.3d 673, 676 (Tex. App.—Eastland 2010, no pet.).

### 2. Applicable Law

Under the relevant provisions of section 156.101 of the family code, an order providing the terms and conditions of conservatorship may be modified by the trial court if modification would be in the best interest of the child and at least one of the two criteria applicable in this case is met: (A) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since rendition of the order; or (B) "the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is

4

the child's preference to have the exclusive right to designate the primary residence of the child." TEX. FAM. CODE ANN. § 156.101(1)(A)-(B) (West Supp. 2011).

### 3. Discussion

As the party seeking modification of the parent-child relationship, appellant had the burden at trial to establish each of the foregoing criteria in her favor. *See id.* Implicit in the trial court's denial of appellant's request for modification is a finding that appellant failed to establish one or more of the criteria. *See Burns*, 116 S.W.3d at 920.

With regard to J.B., who is under the age of 12, we believe the trial court was within its discretion to deny appellant's request for modification because appellant did not establish that there had been a material and substantial change in circumstances since the 2009 order granting appellee the exclusive right to determine residence. *See* TEX. FAM. CODE ANN. § 156.101(1)(A).

To prove a material and substantial change of circumstances has occurred, a movant must show the conditions as they existed at the time of entry of the prior order. *In re C.C.J.*, 244 S.W.3d at 917 (citing *In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.)). Once such conditions have been established, the movant must show what material changes have occurred in the intervening period. *Id.* A trial court's determination of changed circumstances is not guided by rigid rules, but is fact-specific. *Id.* (citing *In re Z.B.P.*, 109 S.W.3d 772, 779 (Tex. App.—Fort Worth 2003, no pet.)).

In this case, the prior order that appellant sought to modify was entered by agreement of the parties in March 2009. Other than testimony establishing that the order was entered by agreement, there is no evidence in the record regarding the

5

conditions as they existed in 2009. In the absence of such evidence, the trial court had no basis to find that a material and substantial change had occurred. Accordingly, it was not an abuse of discretion for the trial court to deny appellant's request for modification as it related to J.B.

With regard to C.B., who is over the age of 12, we believe that the trial court was within its discretion to deny appellant's request for modification on the basis that it was not in the best interest of the child. *See* TEX. FAM. CODE ANN. § 156.101(1).

The trial court is given wide latitude in determining the best interest of a minor child. *Gillespie*, 644 S.W.2d at 451 (citing *Leithold v. Plass*, 413 S.W.2d 698 (Tex. 1967)). Furthermore, the trial court, as the fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). When a trial court is presented with conflicting evidence, it may believe one witness and disbelieve others as well as resolve inconsistencies in testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Viera v. Viera*, 331 S.W.3d 195, 210 (Tex. App.—El Paso 2011, no pet.).

"The trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel the forces, powers, and influences that cannot be discerned by merely reading the record." *In re A.D.H.*, 979 S.W.2d 445 (Tex. App.—Beaumont 1998, no pet.). Witness credibility issues "that depend on appearance and demeanor cannot be weighed by the appellate court." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the transcript, the appellate court must defer to the fact-finder's determinations, at least so long as those determinations are not themselves unreasonable. *Id.*

6

In this case, the trial court was presented with evidence from appellant and appellee concerning the sexual abuse of C.B. by Lonnie Taylor, appellant's former boyfriend. It was undisputed that C.B.'s outcry of sexual abuse in 2006 is what necessitated her relocation back to appellee's home in 2007. It was also undisputed that Taylor pled guilty to one or more charges as part of a plea-bargain arrangement.

The trial court heard evidence about the different manner in which appellee and appellant responded to C.B.'s outcry of sexual abuse. Appellee testified that he sought custody of C.B. and then placed her in counseling and that he believed C.B. was sexually abused. He worked with law enforcement in Albuquerque, New Mexico to ensure Taylor was prosecuted.

Appellant gave the following testimony:

Counsel:    Well, now do you believe that your boyfriend Lonnie Taylor sexually abused [C.B.]?

Appellant:    I believe what my daughter tells me, yes, ma'am.

Counsel:    Do you believe that Lonnie Taylor sexually abused your daughter?

Appellant:    Yes, ma'am.

Counsel:    Did you tell the investigator in New Mexico that you didn't really believe that had happened?

Appellant:    No. I did not say that I didn't believe that it never happened.

Counsel:    What did you tell the investigator?

Appellant:    I told her that [C.B.] came to me and told me that it didn't happen . . . . [C.B.] told me that [appellee] had her lie about what Lonnie did to her . . . . [C.B.] came and told me that [appellee] had her making these allegations towards Lonnie Taylor and that when she would say it wasn't true he would slap her or hit her or tell her he was going to have her put in

7

jail because she shouldn't be making those remarks that they weren't true.

I did believe her when she came to me the first time when we went to court for it, which was in January 2007 when [C.B.] stayed here to live with her father. And when we put everything together after [C.B.] came to me telling me that it wasn't true, I have my doubts but only because she came to me telling me that [appellee] has her lying about it.

Appellant's aunt from New Mexico also testified on the subject of C.B.'s outcry and appellant's response to it:

Counsel:    Mr. Lonnie Taylor was found guilty of abusing [C.B.]; correct?

Witness:    That was a plea bargain.

Counsel:    Right.

Witness:    The man had no choice.

Counsel:    He could have gone to trial; couldn't he, Mrs. Garza?

Witness:    Could he have gone to trial?

Counsel:    He could have gone to trial, couldn't he?

Witness:    I wish he would have.

Counsel:    A criminal can always go to - -

Witness:    I wish he would have, ma'am, so the truth would have been told.

Counsel:    Okay. Because you and [appellant] - -

Witness:    Uh-huh

Counsel:    Don't believe that Lonnie Taylor hurt [C.B.], do you?

Witness:    No, ma'am. We don't, and [appellee] knows that.

. . .

8

Counsel: All of your family . . . doesn't believe that Lonnie Taylor hurt her, isn't that true?

Witness: That's true.

Counsel: [A]nd you don't believe that Lonnie Taylor hurt [C.B.], do you?

Witness: No, ma'am. I don't.

Counsel: All right. And [appellant] doesn't believe that Lonnie Taylor hurt [C.B.], does she?

Witness: No, ma'am.

Counsel: Well, I guess I'm confused. I'm trying to figure out why you would believe that he didn't abuse your niece if she said that he did.

Witness: [C.B.] never told me he did. She never told [appellant]. [Appellee] and [his] so-called wife was – were the ones that, you know, were told. And I just don't understand how that was because [C.B.] was always open with her mom. So that was kind of like, you know, why wouldn't [C.B.] tell her mom.

Counsel: But after she said these things y'all still didn't believe her?

Witness: No, ma'am. No.

. . .

Counsel: Okay. If something else happened to [C.B.] and she came forward and said somebody had hurt her, do you think you'd have trouble believing her?

Witness: No, ma'am.

Counsel: You don't believe her about Lonnie Taylor but you would believe her if she came forward with something else?

Witness: Well, I mean, if it was true, yes, I would believe her.

Counsel: How would you know whether it's true, Mrs. Garza?

Witness: How do you know it's true?

9

Counsel: How do you know it's true?

Witness: I don't know. About Lonnie I don't know if it's true. Is it – I don't think it's true. I know it's not true because he never got the opportunity to be alone with those girls. Never. Those girls stayed with us until [appellant] got home or [appellant's] friend went and took them, which was a lady friend.

Counsel: Okay.

Witness: Lonnie never had a chance to keep those girls. Lonnie was never around that much. . . . He was never home.

The trial court also heard testimony from Chambliss, C.B.'s counselor:

Counsel: So in relation to . . . [C.B.] and the sexual abuse, has she ever told you anything happened to her sexual abuse wise?

Witness: No.

Counsel: Has she ever denied that anything happened to her sexual abuse wise?

Witness: No. She just says she doesn't really remember it.

Counsel: Okay. And what kind of – what kind of risk is there for children who make an outcry of sexual abuse if their parents don't believe that that happened to them?

Witness: Well, obviously they get – continue to be a victim, you know, because if the parent doesn't believe them they feel bad about themselves. Other people can abuse them and they think it's okay. You know, there's a lot of things that could happen to her.

Counsel: Have –

Witness: In other words, she's not protected.

Counsel: All right. Do you have any question that [appellee] will protect [C.B.] in his home?

Witness: No.

Counsel: Do you know whether [appellant] would protect [C.B.]?

10

Witness:     I don't know that.

Chambliss also testified that, in her opinion, it was in C.B.'s best interest to remain in appellee's home.

On this record, we believe the trial court implicitly found that it was not in C.B.'s best interest to relocate to New Mexico to live with appellant. *See Burns*, 116 S.W.3d at 920. As noted above, an abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex. App.—Houston [1st Dist.] 1996, no writ). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.*

In this case, the trial court had evidence of a substantive and probative character to demonstrate that it was in C.B.'s best interest to remain in appellee's custody because appellee believed her outcry of sexual abuse, provided her with the appropriate care by licensed counselors, cooperated with law enforcement to ensure the perpetrator was brought to justice, and maintained a safe and healthy home for C.B. that was free of sexual abuse. We note that the trial court has broad discretion in considering testimony and evidence, with regard to what conditions are detrimental or advantageous to children for the purpose of deciding custody issues. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.). Moreover, the mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate justice in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

11

Appellant's first issue is overruled.

**B. Issue Two**

In her second issue, appellant complains that the trial court erred by refusing to interview C.B. in chambers because she is a child over 12 years of age.

**1. Applicable Law**

Texas Family Code section 153.009(a) provides the following:

In a nonjury trial or at a hearing, on the application of a party, the amicus attorney, or the attorney ad litem for the child, the court shall interview in chambers a child 12 years of age or older and may interview in chambers a child under 12 years of age to determine the child's wishes as to conservatorship or as to the person who shall have the exclusive right to determine the child's primary residence. The court may also interview a child in chambers on the court's own motion for a purpose specified by this subsection.

TEX. FAM. CODE ANN. § 153.009(a) (West 2008).

**2. Discussion**

At the close of evidence, appellant made two requests that the trial court interview C.B. in chambers. The requests were denied. In denying appellant's first request, the trial court stated, "I do not feel that that will help me and so I'm going to deny that request." In denying appellant's second request, the trial court stated, "I have told you before that based on what I've heard so far I do not think that it's going to assist me in making this decision and that's the reason I've made the decision I've made."

Appellant contends that the trial court had no discretion to deny the requests because the term "shall" used in section 153.009(a) is mandatory, not discretionary. We agree. Appellant's argument is consistent with section 311.016 of the Code Construction Act, which states in relevant part, "'[s]hall' imposes a duty." TEX. GOV'T CODE ANN. § 311.016(2) (West 2005). Moreover, we agree with appellant that section

12

153.009(a) confers discretion on the trial court only with regard to children under the age of 12 and does not distinguish between written and oral applications, as the Beaumont Court of Appeals recently suggested. *See In re S.L.L.*, No. 09-09-00429-CV, 2011 Tex. App. LEXIS 2367, at *14 (Tex. App.—Beaumont Mar. 31, 2011, pet. denied) (mem. op.) ("In this case, there is no application for an interview contained in the clerk's record; the trial court had the discretion to deny the verbal request.").

Nevertheless, we note that subsection (c) provides that "[i]nterviewing a child does not diminish the discretion of the court in determining the best interests of the child." TEX. FAM. CODE ANN. § 153.009(c). In this case, the trial court's statements "I do not feel that [an interview] will help me" and "based on what I've heard so far I do not think that [an interview is] going to assist me in making this decision" indicate that the trial court had reached a decision with regard to the child's best interest and that the court's decision would not be altered by the child's stated preferences. In this regard, the trial court's refusal to interview the child in chambers appears to have been a decision calculated to avoid the child's unnecessary involvement in the proceeding.

Several witnesses gave testimony regarding the children's preferences. Chambliss, C.B.'s counselor, who began seeing C.B. in September 2010, testified that C.B. has never said anything to her to indicate that she wants to change where she lives. Stanfield, J.B.'s counselor, who began seeing J.B. in January 2011, testified that J.B. has been "wishy washy" about where she wants to live and does not seem to feel strongly about it. She appears to be torn between the two homes, according to Stanfield, who also told the court that J.B. seems to be happy living with appellee.

13

Appellant testified that, since March 2010, both C.B. and J.B. have told her that they did not want to live with appellee. In relevant part, appellant testified as follows:

> It was the day before they were supposed to fly back to their dad that [C.B.] and [J.B.] asked me to go sit down with them in the living room and started crying. And I'm not talking about just a little bit of tears. They were bawling.
>
> [C.B.] told me that her dad had her lie about what Lonnie had did [sic] to her. [J.B.] told me she didn't want to go back because they were mean to her, and [C.B.] also had told me that her dad calls her fat and ugly and that she gets it from me. And that . . . when [C.B.] tells her dad that she wants to live with me, he slaps her. He tells her he's going to have her put in jail and just other simple things like that.
>
> And as for [J.B.], she just told me that they're mean to her and that's all she could tell me.

Maria Rodriguez, appellant's cousin, testified about her recent experience with the girls and how they have expressed their desire to be with their mother: "[T]hey do seem to hang on her more. When I was with them this past weekend they were just all over her like they were grasping for everything they can get while she's – while they have her. And I think that affects them."

The trial court also heard testimony from Leticia Garza, appellant's aunt, who lives in New Mexico and was present when the girls started crying and told their mother they did not want to return to Texas to live with appellee. Garza also testified that prior to the trial, C.B. told her, "I'll be so glad to go home," referring to her mother's home in New Mexico.

In light of the foregoing evidence concerning the preferences of the children and in light of the trial court's statements that an interview in chambers would not assist the court in making the decision based on what it had already heard, we conclude that the trial court's refusal to interview C.B. was consistent with the discretion recognized in

14

subsection (c) of family code section 153.009.  Although the trial court violated the mandatory language in subsection (a) by refusing to interview C.B., we conclude based on the foregoing that the error was harmless and did not amount to reversible error. *See* TEX. R. APP. P. 44.1(a).  Appellant's second issue is overruled.

## C.  Issue Three

In her third issue, appellant complains the trial court erred in allowing the testimony of an improper, untimely-designated expert.

### 1.  Applicable Law and Standard of Review

Under Rule 193.6, discovery that is not timely disclosed and witnesses that are not timely identified are inadmissible as evidence.  TEX. R. CIV. P. 193.6(a).  A party who fails to timely designate an expert has the burden of establishing good cause or a lack of unfair surprise or prejudice before the trial court may admit the evidence.  TEX. R. CIV. P. 193.6(b).  We review a trial court's ruling to admit or exclude the testimony of an untimely-designated expert for abuse of discretion.  *See Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

### 2.  Discussion

At trial, appellant objected to the testimony of Kim Stanfield, J.B.'s counselor, on the basis that she was untimely designated:

> And, Your Honor, I know earlier off the record [counsel for appellee] had mentioned that Kim Stanfield had started seeing [J.B.], the younger child in February of this year and that's the reason she could not – or January, I'm sorry, and that's the reason she could not supplement the discovery to me prior to January 6.
>
> But you ordered her to give me some notes and I did get those, Your Honor.  And I don't know if [counsel for appellee] is just [sic] didn't remember correctly or what the assertion to the Court was, but the notes actually indicate that the little girl was seeing the counselor back in 2010

15

prior to the discovery ever being due. And so I would renew my objection to an improperly designated expert.

The trial court overruled appellant's objection, stating, "Well, I'm going to . . . hear the witness because I think it's essential that I do so."

On appeal, appellant argues that there is no testimony or evidence in the record that either (1) there was good cause for the failure to timely designate, or (2) that the failure to designate the expert would neither unfairly surprise nor unfairly prejudice appellant's case. *See* TEX. R. CIV. P. 193.6(a). According to appellant, appellee was given more than adequate time to respond to the requests, which were propounded on September 10, 2010.

Counsel for appellee told the trial court that Stanfield did not begin to see J.B. until January 2011. Furthermore, Stanfield testified that her "first visit with [J.B.] was January 4, 2011" and that the note referred to by appellant that "says January 4, 2010" was a mistake. Although appellant continues to assert that appellee had four months to answer the requests propounded on September 10, 2010, the trial court heard uncontroverted evidence to the contrary. Therefore, we conclude that appellant has not demonstrated an untimely designation by appellee or an abuse of discretion by the trial court. Accordingly, we overrule appellant's third issue.

### D. Issue Four

In her fourth issue, appellant complains the trial court erred in excluding proper rebuttal evidence.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.

16

2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Under an abuse of discretion standard, we are not free to substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Instead, a trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer*, 701 S.W.2d at 241-42.

### 2. Discussion

At trial, appellee testified that appellant "gets to talk to [C.B. and J.B.] at least two possibly three times a week." Appellee also testified that he has never done anything to limit the number of times appellant speaks to the children during the week. Appellant sought to cross-examine appellee regarding a purported inconsistency with his testimony, as evidenced by an email in which appellee told appellant: "I am in compliance with what the court order states concerning the phone calls to the girls, just as long as you speak to them once a week." Counsel for appellee objected to the admission of the email on the basis that it was not produced in discovery, and the trial court sustained the objection.

On appeal, appellant contends that the trial court committed reversible error by excluding the email from evidence. A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See Alvarado*, 897 S.W.2d at 753-54. In determining if the excluded evidence probably resulted in the rendition of an improper judgment, a court must review the entire record. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.

17

1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A court ordinarily will not reverse a judgment for erroneous rulings on admissibility of evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Gee*, 765 S.W.2d at 396. To obtain a reversal of a judgment based on error in the exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. TEX. R. APP. P. 44.1; *Alvarado*, 897 S.W.2d at 753; *McCraw*, 828 S.W.2d at 757.

We have reviewed the entire record and conclude that appellant has not demonstrated that the trial court committed reversible error by excluding the complained-of email. As appellant notes in her brief, Texas law does not restrict a party to any one particular form of attacking the credibility of a witness. *See* TEX. R. EVID. 607, 611(b). Texas Rule of Evidence 613(a) allows for the examination of a witness concerning a prior inconsistent statement. *See* TEX. R. EVID. 613(a). Although the trial court excluded the email from evidence, the error, if any, did not restrict appellant from cross-examining and impeaching appellee with the inconsistent statement he made in the email. Nor did the trial court prohibit appellant from offering her own testimony about the frequency of her telephone calls to the children and the limits or restrictions appellee placed on those communications. Accordingly, appellant cannot establish that the error, if any, was calculated to cause and probably did cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1.

Appellant's fourth issue is overruled.

18

### III. Conclusion

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
2nd day of August, 2012.